UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES OJIDA, JR.,

     Plaintiff,

v.            8:15-CV-1206
            (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____

APPEARANCES:      OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER   MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.    SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

  This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 26.) This case has proceeded in accordance with General

Order 18.

  Currently before the Court, in this Social Security action filed by James Ojida, Jr.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 17.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on December 6, 1967. (T. 133.) He completed the 8th grade. (T. 332.) Generally, Plaintiff's alleged disability consists of nerve damage at C4-7, ruptured discs, spinal stenosis, radiculopathy of the spine, nerve damage in his arms and right leg, sciatica, diabetes, and rheumatoid arthritis ("RA"). (T. 331.) His alleged disability onset date is March 17, 2011. (T. 133.) His date last insured is March 31, 2015. (T. 311.) He previously worked as a floor installer. (T. 332.)

### B. Procedural History

On March 4, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 133.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 11, 2012, and again for a supplemental hearing on November 8, 2012, Plaintiff appeared before the ALJ, Arthur Patane. (T. 116-132, 31-73.) On November 30, 2012, ALJ Patane issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 140-154.) On March 29, 2013, the Appeals Council ("AC") remanded Plaintiff's case for further proceedings. (T. 155-158.) On September 26, 2013, Plaintiff appeared before ALJ Patane for a hearing. (T. 74-115.) On April 14, 2014 ALJ Patane issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-30.) On September 30, 2015, the AC denied

Plaintiff's request for review, rendering the ALJ's April 2014 decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-24.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2015 and Plaintiff had not engaged in substantial gainful activity since March 17, 2011. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of arthritis with multiple joint pain, history of right inguinal hernia, cervical and lumbar disc bulges with radiculopathy, major depressive disorder, anxiety disorder, and learning disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14-16.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional exertional and non-exertional limitations. (T. 16.)[1] The ALJ determined that Plaintiff was limited to lifting 10 pounds, could only occasionally reach overhead with the upper extremities, could frequently but not constantly grasp with either hand, must be afforded a five minute rest or stretch break after sitting for one hour, was limited to occasional contact with supervisors, and was limited to performing simple or detailed (but not complex) work. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 22-24.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ gave too much weight to the consultative examiner and not enough weight to the treating sources.  (Dkt. No. 11 at 17-23 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ erred by discrediting Plaintiff's testimony.  (*Id.* at 23-26.)  Third, Plaintiff argues that Plaintiff was disabled by his combination of arthritis with multiple joint pain, cervical and lumbar disc bulges with radiculopathy, nerve damage, major depressive disorder, anxiety disorder, learning disorder, headaches, cellulitis, diabetes, and fibromyalgia.  (*Id.* at 26-33.)  Fourth, and lastly, Plaintiff argues that the ALJ erred by not considering the side effects of Plaintiff's pain medication.  (*Id.* at 33-35.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues that Plaintiff was not disabled by his impairments in combination.  (Dkt. No. 17 at 5-7 [Def.'s Mem. of Law].)  Second, Defendant argues that Plaintiff did not meet his burden to show that his RFC was more limited than that found by the ALJ because 1) the ALJ properly assessed the evidence in the record and 2) the ALJ properly considered the assessment of Plaintiff's mental RFC.  (*Id.* at 7-11.)  Third, and lastly, Defendant argues that the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 13-16.)

## III.    RELEVANT LEGAL STANDARD

## A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.     ANALYSIS**

For ease of analysis Plaintiff's arguments will be addressed out of order and in a consolidated fashion.

## A. The ALJ's Evaluation of the Medical Opinion Evidence

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues that the ALJ erred in evaluating the opinions provided by Plaintiff's treating sources. (Dkt. No. 11 at 17-23 [Pl.'s Mem. of Law].)[2] Plaintiff states that the ALJ failed to apply or consider the factors outlined in 20 C.F.R. § 404.1567(c)(2)(i)-(iv). (*Id.* at 22.) Where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. §

---

[2]     Of note, Plaintiff's brief cites to the outdated "treating physician rule" at 20 C.F.R. § 404.1527(d)(2). The "treating physician rule" is now found at 20 C.F.R. § 404.1527(c)(2). The change was effective March 26, 2012, due to a regulatory change that did not affect the substantive language of that section of the regulation. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012).

404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Here, the ALJ properly adhered to the Regulations in evaluating the treating physician opinion evidence in the record. For example, the ALJ specifically acknowledged that Joshua Frank, M.D. and Jayant Jhaveri, M.D. were treating sources. (T. 18, 19.) The ALJ also outlined in detail treating source notations and opinions, thus indicating the ALJ was aware, and took into consideration, the length, frequency, nature, and extent of treatment. (T. 18-20.) Therefore, Plaintiff's argument that the ALJ did not adhere to the Regulations fails.

Plaintiff received his primary care from Dr. Jhaveri. In July 2011, Dr. Jhaveri stated in his treatment notations that he did not believe that Plaintiff was able to work. (T. 595.) On January 10, 2013, Dr. Jhaveri completed a medical source statement for the New York State Office of Temporary and Disability Assistance. (T. 637-638.) Therein, Dr. Jhaveri opined that Plaintiff was "moderately limited" in his ability to: walk, stand, sit, and climb. (T. 638.) Dr. Jhaveri opined that Plaintiff was "very limited" in his ability to: lift, carry, push, pull, bend, and use his hands. (*Id.*) Dr. Jhaveri wrote on the form that Plaintiff was unable to sit or stand for "prolonged periods" and Plaintiff could not squat or kneel. (*Id.*)

The ALJ properly afforded Dr. Jhaveri's statement that Plaintiff was unable to work no weight because it was not a medical opinion and related to a matter reserved to the Commissioner. (T. 20.) The ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d).

The ALJ afforded "some weight" to Dr. Jhaveri's 2013 statement, but not "great weight" because the ALJ determined that it was inconsistent with objective medical test results, inconsistent with documented examination findings, and inconsistent with other opinion evidence. (T. 20.)

Plaintiff states that the ALJ erred in his assessment of Dr. Jhaveri's opinion, because the doctor's opinions were "well-supported by the objective clinical and radiological evidence." (Dkt. No. 11 at 22 [Pl.'s Mem. of Law].) However, Plaintiff failed to provide any factual support for this contention. Nonetheless, the record has been reviewed at length to determine whether Plaintiff's argument is meritorious.

As an initial matter, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, substantial evidence supported the ALJ's determination to afford Dr. Jhaveri's 2013 opinion "some weight," based in part, on its inconsistency with other objective medical evidence in the record. For example, as outlined by the ALJ, Dr.

Jhaveri's opinion that Plaintiff was "very limited" in the use of his hands was inconsistent with other evidence in the record. Consultative examiner, Nader Wassef, M.D., noted on examination that Plaintiff's hand and finger dexterity was intact and he had full grip strength. (T. 536.) Consultative examiner, David Welch, M.D., observed "good strength" without any "localizing weakness." (T. 668.)

The ALJ also provided good reasons to support his determination to afford "some weight" to Dr. Jhaveri's opinion regarding Plaintiff's ability to stand and walk. (T. 20.) The ALJ ultimately relied on the observations and opinion of Dr. Welch who noted that Plaintiff ambulated with a "normal looking though slightly wide-based gait," and was able to ambulate effectively. (T. 20, *referring to* T. 668.) Based on his examination, Dr. Welch opined that Plaintiff was capable of: sitting up to six hours in an eight hour workday; standing/walking for up to six hours in an eight hour workday in two hour intervals; occasionally reaching and feeling; frequently fingering, handling, pushing, and pulling; occasionally climbing, stooping, kneeling, crouching, crawling; but could not climb ladders, balance, or work from unprotected heights. (T. 669-671.)

Therefore, substantial evidence supported the ALJ's determination to afford Dr. Jhaveri's opinion "some weight," based in part on the objective medical evidence in the record which failed to support his opinion regarding Plaintiff's limitations.

Plaintiff argues that the ALJ failed to give sufficient weight to the "well-supported findings and opinions of treating nurse practitioner, Mr. Dempsey." (Dkt. No. 11 at 22 [Pl.'s Mem. of Law].) Again, it is unclear from Plaintiff's brief what, exactly, he objected to in the ALJ's treatment of Mr. Dempsey's findings and opinion, or even for that matter, what findings and opinions of Mr. Dempsey the ALJ allegedly mistreated. As outlined

by Defendant, although a March 2013 examination note by Mr. Dempsey indicated some redness and swelling of Plaintiff's hands, his grip strength was four plus out of five, bilaterally. (T. 649.) The ALJ noted Mr. Dempsey's findings and concluded that despite redness and swelling, Plaintiff's grip strength was still intact and subsequent examination records did not document further incidences of swelling or redness in the hands. (T. 20.) Therefore, substantial evidence in the record supported that ALJ's treatment of Mr. Dempsey's observation regarding Plaintiff's hands.

Although Plaintiff initially states in his argument heading that the ALJ erred in affording more weight to a consultative examiner than a treating source, Plaintiff appears to argue that the ALJ erred in failing to afford more weight to certain aspects of the consultative examiner's report. (Dkt. No. 11 at 17, 22-23 [Pl.'s Mem. of Law].)

As an initial matter, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.")

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing

*Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Further, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Plaintiff argues that the ALJ erred in not affording more weight to Dr. Welch's statement that he suspected that there was a component of peripheral neuropathic disease relating to a combination of Plaintiff's diabetes and prior alcohol use. (Dkt. No. 11 at 22-23 [Pl.'s Mem. of Law].) The ALJ properly afforded this aspect of Dr. Welch's report "little weight" because the ALJ concluded it was "speculative." (T. 21); *see Stottlar v. Colvin*, No. 13-CV-0047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) ("The ALJ also properly found that Dr. Shapiro's opinion was too speculative in that the doctor opined that Plaintiff "may have" difficulty in certain areas and did not define the degree of that difficulty."); *see Breinin v. Colvin*, No. 14-CV-1166, 2015 WL 7749318, at *11 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted,* No. 14-CV-1166, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015). Therefore, the ALJ did not err in affording

less weight to Dr. Welch's statement that Plaintiff may have a component of peripheral neuropathy because that aspect of his opinion was speculative. Dr. Welch ultimately opined that Plaintiff was capable of frequent handling and fingering, which the ALJ adopted in his RFC determination.

Overall, the ALJ's physical RFC was supported by substantial evidence in the record. The ALJ relied primarily on the medical source opinion of Dr. Welch; however, the ALJ also took into consideration the medical opinions of Plaintiff's treating source, Dr. Jhaveri and consultative examiner, Dr. Wassef. The ALJ did not err in his evaluation of the medical opinion evidence in the record because the ALJ properly adhered to the Regulations and provided good reasons for affording weight to the opinion evidence in the record. Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's weighing of the medical opinion evidence in the record be upheld. Because the ALJ did not err in weighing the medical opinion evidence it is therefore also recommended that the ALJ's physical RFC determination also be upheld.

Plaintiff next argues that the ALJ failed to give sufficient weight to Plaintiff's treating psychiatrist, Joshua Frank, M.D. (Dkt. No. 11 at 23 [Pl.'s Mem. of Law].) In support of his argument Plaintiff states that although Plaintiff's mental condition fluctuated, Dr. Frank's opinions were consistent at the time Dr. Frank provided them. (*Id.*)

In May of 2013, Dr. Frank opined that Plaintiff had "marked" or "extreme" limitations in every activity related to work functioning. (T. 707-709.) The ALJ afforded Dr. Frank's medical source statement "no weight." (T. 18.) The ALJ acknowledged that

Dr. Frank issued the statement during a time of acute symptom exacerbation. (*Id.*) However, the ALJ reasoned that Dr. Frank's opinion was contradicted by consultative examiner, Richard Liotta, Ph.D. (T. 18, *referring to* 718-724.) The ALJ also reasoned that Dr. Frank's opinion was inconsistent with his own treatment notations and observations which documented normal mental status examinations and GAF scores. (T. 18.)

The ALJ's mental RFC determination was supported by the medical opinion of consultative examiner Dr. Liotta and objective medical evidence in the record, such as the normal mental status examinations in the record and Plaintiff's GAF scores. Dr. Liotta opined that Plaintiff had mild to moderate limitations in his ability to perform mental work activities. (T. 723-724.) Under SSA regulations, even having a moderate impairment in the functional area would not preclude the ability to do basic work activities. There are five degrees of limitation that are relevant: none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 416.920a(c)(4). An extreme limitation is, on its face, incompatible with the ability to do any gainful activity. *See id.* Further, the Second Circuit has held that mild to moderate limitations would not preclude a plaintiff from performing basic mental work activities. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined her indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations.").

Plaintiff's normal mental status examinations further supported the ALJ's mental RFC determination. On numerous occasions, Plaintiff was observed to be alert, cooperative, clean and neatly dressed; oriented; with normal speech; intact memory;

and with good insight and judgment. (T. 641, 658, 660-661, 662, 664, 711, 713, 716, 732, 737, 739, 741, 744, 746, 748.)

Plaintiff also makes the argument that the ALJ did not give sufficient weight to Plaintiff's mental impairments and learning disability. (Dkt. No. 11 at 32-33 [Pl.'s Mem. of Law].) However, Plaintiff essentially re-argues his initial argument, that the ALJ's mental RFC determination was not proper because he failed to provide more weight to Dr. Frank's opinion. (*Id.* at 23.) Therefore, the ALJ's mental RFC determination was supported by substantial evidence in the record, namely, the medical source opinion of Dr. Liotta and the normal mental status examinations conducted by Plaintiff's treating mental health providers. For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's weighing of Dr. Frank's opinion, and ALJ's mental RFC determination, be upheld.

### B. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See C.F.R. § 404.1520(c). The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person

has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

It has been well established that "[b]ecause step two merely serves as a filter to screen out de minimis disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Plaintiff makes the conclusory argument , throughout his brief, that the ALJ erred in failing to find Plaintiff's conditions of diabetes, cellulitis, and fibromyalgia non-severe

impairments.  (Dkt. No. 11 at 23, 28, 32 [Pl.'s Mem. of Law].)  Although Plaintiff was diagnosed, or treated, for these impairments, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe.  *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

First, the ALJ specifically addressed Plaintiff's cellulitis at step two and determined that it was not a severe impairment because the record failed to contain any functional limitations due to cellulitis.  (T. 14.)  Second, although not noted in his step two determination portion of his decision, the ALJ did conclude that Plaintiff's diabetes was "severe."  (T. 22.)

Plaintiff argues that his diagnosis of fibromyalgia supports his symptoms of pain, fatigue, and other limitations.  (Dkt. No. 11 at 32 [Pl.'s Mem. of Law].)  Although fibromyalgia was noted in the record (T. 686) there were no functional limitations attributed to it and the record contains no other notations of fibromyalgia.  Further, the symptoms attributed to fibromyalgia, such as pain, were considered by the ALJ because Plaintiff suffered from other impairments, such as arthritis, which manifested similar symptoms.  (T. 13, 19.)

The ALJ thoroughly discussed Plaintiff's impairments throughout his decision and the ALJ thoroughly discussed the medical opinion evidence providing limitations based on those impairments.  As outlined herein, substantial evidence supported the ALJ's treatment of the medical opinion evidence in the record providing limitations based on Plaintiff's impairments, severe and non-severe.  The ALJ did not commit legal error at

step two in his determination that Plaintiff's cellulitis was non-severe, further, contrary to Plaintiff's contention, the ALJ did find Plaintiff's diabetes to be severe. Any error in failing to specifically account for Plaintiff's fibromyalgia was harmless, because the record failed to indicate that Plaintiff suffered from any limitations due to his fibromyalgia and any symptoms that may have been associated with fibromyalgia were considered in the ALJ's decision.

Plaintiff argues that he was disabled due a combination of all his impairments. (Dkt. No. 11 at 26-27 [Pl.'s Mem. of Law].) Here, the ALJ's step two determination was proper and the ALJ properly evaluated the medical opinion evidence in the record in formulating his RFC determination. The ALJ's decision provided a thorough and complete review of the record and the ALJ took into consideration all of Plaintiff's impairments in making his determination. Therefore, for the reasons stated herein, and further outlined in Defendant's brief (Dkt. No. 17 at 5-7), it is recommended that the ALJ's step two be upheld and also recommended that the ALJ's RFC determination be upheld because the ALJ properly took into consideration all of Plaintiff's impairments.

## C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23,

27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. See 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Plaintiff argues that the ALJ erred in his credibility assessment "as a matter of law" because Plaintiff's one exchange about illicit drug use and his testimony that he enjoyed going to camp was not sufficient to discredit Plaintiff's testimony. (Dkt. No. 11

at 26 [Pl.'s Mem. of Law].)  Plaintiff argues elsewhere in his brief that the ALJ's physical and mental RFC determination are not supported by substantial evidence because they did not take into consideration Plaintiff's allegation of pain.  (Dkt. No. 11 at 28-30, 32-33 [Pl.'s Mem. of Law].)

First, in his credibility determination the ALJ concluded that Plaintiff was not entirely credible because his statements were not supported by objective medical evidence, Plaintiff' informed providers that treatment was working, and Plaintiff was not forthcoming about his marijuana use.  (T. 21-22.)  Here, the ALJ cited that Plaintiff enjoyed "going to camp" was an example of Plaintiff's statements to providers indicating that mental health treatment was working because he was doing things that he enjoyed.  (T. 21.)  Further, the ALJ did not discredit Plaintiff's testimony because Plaintiff used illicit drugs.  The ALJ discredited Plaintiff's testimony, in part, because Plaintiff was not forthcoming about his drug use and his testimony was inconsistent.  Inconsistencies in the record may be considered in assessing an individual's subjective complaints.  20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.").

Second, contrary to Plaintiff's assertion, the ALJ did take into consideration Plaintiff's allegations of pain; however, the ALJ found that Plaintiff's allegations were not entirely credible.  (T. 21-22.)  In making his credibility determination the ALJ considered objective medical imaging, such as MRIs.  (T. 19, 21.)  The ALJ also relied on Plaintiff's

testimony regarding his activities of daily living; medical treatment received, including medications; and Plaintiff's testimony regarding what he could still do despite his impairments.  (T. 13, 15, 16-18, 22.)

Plaintiff argues elsewhere in his brief that the ALJ failed to take into consideration the side effects of Plaintiff's narcotic medication.  (*Id.* at 33-34.)  Although the ALJ did not expressly discuss Plaintiff's alleged negative side effects from narcotic medication, where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation.  *Atwater*, 512 F. App'x at 70.  Further, the ALJ extensively discussed Plaintiff's medication in his decision.  (T. 13, 15, 16-18, 22.)

Therefore, the ALJ did not err as a matter of law in his credibility determination.  The ALJ properly took into consideration inconsistencies in Plaintiff's testimony as part of his overall credibility determination, and therefore, for the reasons stated herein and further outlined in Defendant's brief, it is recommended that the ALJ's credibility determination be upheld.

### D.  The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth

at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala,* 595 F.3d at 411). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Here, the ALJ utilized a vocational expert at step five. (T. 23-24.) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). In so far as Plaintiff argues that the ALJ erred in his step five determination because his RFC was not as limiting as Plaintiff contends, Plaintiff's argument fails for the reasons stated herein. (Dkt. No. 11 at 28 [Pl.'s Mem. of Law].) Therefore, it is recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      December 20, 2016

_Bill Carter_
William B. Mitchell Carter
U.S. Magistrate Judge